**FOLEY & LARDNER LLP**
402 W. BROADWAY, SUITE 2100
SAN DIEGO, CA 92101-3542
TELEPHONE:   619.234.6655
FACSIMILE:    619.234.3510

MICHAEL P. MCCLOSKEY, CA BAR NO. 106051
          MMCCLOSKEY@FOLEY.COM
KATHERINE P. SOBY, CA BAR NO. 241073
          KSOBY@FOLEY.COM

**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2411
TELEPHONE:   213.972.4500
FACSIMILE:    213.486.0065

PAMELA L. JOHNSTON, CA BAR NO. 132558

Attorneys for Defendants
SBI-USA, LLC, SBI BRIGHTLINE V,  LLC,
SHELLY S. SINGHAL and NICOLE MARTIN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| NATHAN DRAGE and NATHAN W. DRAGE, P.C. TRUST.<br><br>Plaintiffs,<br><br>vs.<br><br>SHELLY S. SINGHAL; NICOLE MARTIN; JOHN WONG; SBI-USA, LLC. a California Limited Liability Company; SBI BRIGHTLINE V, LLC; FIRST SECURITIES USA, INC. aka FSUSA, INC., a Nevada Corporation; SBI E-2 CAPITAL, LTD.; SBI E-2 CAPITOL<br><br>Defendants. | Case No:  SA CV-07-1417-JVS (ANx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF PAMELA L. JOHNSTON**<br><br>**Hearing:**<br>Date: February 4, 2008<br>Time: 1:30 p.m.<br>Place: Courtroom of the Hon. James V. Selna, Santa Ana Federal Courthouse, Courtroom 10C<br><br>Discovery Cut-Off:  December 18, 2007<br>Trial:  April 1, 2008 |

///

LACA_1025449.4

TO:  ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on February 4, 2008, or as soon thereafter as the matter may be heard, Defendants SBI-USA, LLC, SBI BRIGHTLINE V, LLC, Nicole Martin and Shelly S. Singhal move this Court, pursuant to Fed. Rules of Civ. Proc. 1, 12, 13, and 14, for an order dismissing this action with prejudice, or in the alternative, staying or enjoining this action until the conclusion of the previously-filed related case also before this Court, *NAMS v. Singhal*, SA-CV 07-333 JVS (RNBx).  Defendant SBI USA, LLC filed a motion for summary judgment in this *NAMS* case, which is currently noticed for hearing on January 28, 2008.

These Defendants seek this relief, because (a) each of the claims in this action were compulsory counterclaims under Fed. Rules of Civ. Proc. 13 and 14, which Plaintiffs failed to raise in a prior action involving the same transaction or occurrence in which plaintiff Nathan Drage was joined as a third-party defendant (*NAMS v. Singhal*, SA-CV 07-333 JVS (RNBx)), and (b) each of the claims, as pled, fails as a matter of law.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the pleadings and files in Case No. SA-CV-07-333-JVS (RNVx) of which Defendants request judicial notice, the Declaration of Pamela L. Johnston (requesting such judicial notice and attaching key court documents from that action for the Court's convenience), and upon further arguments as may be raised in the Reply and at the time of hearing in this matter.

LACA_1025449.4

1         This motion is made following the conference of counsel pursuant to L.R. 7-

2    3 which took place on December 31, 2007.  (Johnston Decl., ¶ 9.)

3    Dated:  January 10, 2008

4

Respectfully submitted.
FOLEY & LARDNER LLP
PAMELA L. JOHNSTON

5

6

7    By:  /s/ _____
      PAMELA L. JOHNSTON

8          Attorneys for Defendants SBI-USA,
      LLC, SBI BRIGHTLINE V,  LLC,

9          SHELLY S. SINGHAL and NICOLE
      MARTIN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LACA_1025449.4

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND ....................................................................................... 2

   A.   The First Action ................................................................................ 2

   B.   The Second Action ............................................................................ 4

III.   ARGUMENT ........................................................................................... 5

   A.   The Complaint Should Be Dismissed With Prejudice, Or at Minimum
        Stayed Because It Asserts Claims that Are Barred as Compulsory
        Counterclaims in the First Action .................................................... 5

        (1)   The Complaint Asserts Compulsory Counterclaims ................ 5

        (2)   The Court Should Thus Dismiss this Action With Prejudice,
              Or, at the Very Least, Stay or Enjoin this Action ............... 10

   B.   Drage's Claims Fail As A Matter Of Law. ....................................... 11

        (1)   Applicable Legal Standards .................................................. 11

              a)   Rule 12(b)(6) Legal Standard ...................................... 11

              b)   Rule 9(b) Heightened Pleading Standard for Fraud ...... 12

        (2)   Plaintiffs' Sixth Claim For Civil RICO Fails To Plead A Civil
              RICO Violation .................................................................... 12

              a)   The Complaint Fails to Allege a "Pattern Of
                   Racketeering" ............................................................. 13

        (1)   Section 1961 Does Not Include Securities Violations or "Usury"
              as Predicate Acts ................................................................. 13

        (2)   The Single Alleged Mailing Does Not Constitute a "Pattern" .... 14

              b)   The Complaint Fails to Allege Any Predicate Acts with
                   Specificity .................................................................. 14

              c)   The Injury Element Is Inadequately Pled ...................... 16

        (3)   Several Of The Claims Are Barred By The Applicable Statute

of Limitations ............................................................................17

        a)    Claims Barred By A Two Year Statute Regardless Of The Nature Of The Agreement  -- Securities Fraud (5th), Business Interference Torts (7th and 8th), And Quasi-Contract And Restitution (9th) ...............................................................18

        b)    Claims Barred If Contract Deemed Oral Or Implied – Breach Of Escrow Agreement (1st), Negligence (2nd), Breach Of Fiduciary Duty (4th), and Declaratory Relief (10th).................18

(4)    Even If The Court Treats the Non-Executed Draft Agreement as a Written Agreement, the Draft Agreement's Express Provisions Bar Several Of Plaintiffs' Claims ......................................................20

        a)    Plaintiffs' Negligence-Based Claims are Barred ...........20

        b)    Plaintiffs' Quasi-Contract/Restitution Claim is Barred .21

(5)    Plaintiffs' Fifth Claim For Securities Fraud Should Be Dismissed ..........................................................................22

(6)    Plaintiffs' Seventh And Eighth Claims for Intentional And Negligent Interference With Prospective Advantage Should Be Dismissed ..........................................................................22

(7)    Plaintiffs' Ninth Claim for Quasi-Contract/Restitution Should Be Dismissed.........................................................................23

(8)    Plaintiffs' Tenth Claim For Declaratory Relief Should Be Dismissed. .........................................................................24

(9)    Plaintiffs Cannot Meet FRCP 9(b)'s Heightened Pleading Standard for Their Fraud-Based Claims. .................................24

IV.    CONCLUSION .............................................................................26

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
SA CV-07-1417-JVS (ANX)

LACA_1025449.4

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Adam v. Jacobs,*
    950 F.2d 89 (2d Cir. 1991) ...............................................................................10

*Adams v. California Dept. of Health Services,*
    487 F.3d 684 (9th Cir. 2007) .........................................................................7-8

*Alan Neuman Prods., Inc. v. Albright,*
    862 F.2d 1388 (9th Cir. 1989) .......................................................................24

*Allwaste, Inc. v. Hecht,*
    65 F.3d 1523 (9th Cir. 1995) .....................................................................12, 14

*Barron v. Reich,*
    13 F.3d 1370 .....................................................................................................11

*Bell Atlantic Corp. v. Twombly,*
    127 S.Ct. 1955 (2007).......................................................................................11

*Cenergy Corp. v. Bryson Oil & Gas P.L.C.,*
    657 F.Supp. 867 (D. Nev. 1987) ....................................................................10

*Edwards v. Marin Park, Inc.,*
    356 F.3d 1058 (9th Cir. 2004) ........................................................................14

*Epstein v. Wash. Energy Co.,*
    83 F.3d 1136 (9th Cir. 1996) ..........................................................................11

*Goldfine v. Sichenzia,*
    118 F.Supp.2d 392 (S.D.N.Y. 2000).............................................................17

*Hydranautics v. FilmTec Corp.,*
    70 F.3d 533 (9th Cir. 1995) .......................................................................5, 10

*I. Meyer Pincus & Assocs. v. Oppenheimer & Co.,*
    936 F.2d 759 (2d Cir. 1991)............................................................................11

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) .........................................................................11

*In re Sharp Intern. Corp.,*
    302 B.R. 760 (E.D.N.Y. 2003), *affirmed,* 403 F.3d 43 (2d. Cir. 2005) ..................24

*Kolbeck v. LIT America, Inc.,*
    939 F. Supp. 240 (S.D.N.Y. 1996), *affirmed,* 152 F.3d 918 (2d. Cir. 1998) ........24

iii

LACA_1025449.4

*LeDuc v. Kentucky Cent. Life Ins. Co.*,
    814 F. Supp. 820 (N.D. Cal. 1992) ...............................12

*Mullis v. United States Bank. Ct.*,
    828 F.2d 1385 (9th Cir. 1987) ...............................11

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ...............................12

*Pochiro v. Prudential Ins. Co. of America*,
    827 F.2d 1246 (9th Cir. 1987) ...............................5-6

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ...............................12

*Seattle Totems Hockey Club, Inc. v. National Hockey League*,
    652 F.2d 852 (9th Cir. 1981) ...............................5-6, 10

*Sebastian Intern., Inc. v. Russolillo*,
    128 F.Supp.2d 630 (C.D. Cal. 2001) ...............................12

*Thunderbird Trading Post, Inc. v. U.S. Bureau of Alcohol, Tobacco and Firearms*,
    2007 WL 1128810 (W.D. Wash, 2007) ...............................9

*WAGH v. Metris Direct, Inc.*,
    363 F.3d 821 (9th Cir. 2003) ...............................16


**STATE CASES**

*Barker v. Brown & Williamson Tobacco Corp.*,
    88 Cal.App.4th 42 (2001) ...............................18

*Bell v. Hummel & Pappas*,
    136 Cal.App.3d 1009 (1982) ...............................17

*California Amplifier, Inc. v. RLI Ins. Co.*,
    94 Cal.App.4th 102 (2001) ...............................22

*California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*,
    94 Cal.App.4th 151 (2001) ...............................21

*Dillon v. Bd. of Pension Comm'rs of Los Angeles*,
    18 Cal.2d 427 (1941) ...............................17

*Edwards v. Fresno Community Hosp.*,
    38 Cal.App.3d 702 (1974) ...............................18

iv

*Feinberg v. Intrastate Escrow Corp.*,
   25 Cal. Rptr. 499 (Cal.Ct.App. 1962) ...................................................19

*Hirsch v. Bank of America*,
   107 Cal.App.4th 708 (2003) ...............................................................23

*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assoc's, Inc.*,
   115 Cal.App.4th 1145 (2004) .............................................................20

*In re Estate of Fincher*,
   119 Cal.App.3d 343, 174 Cal.Rptr. 18 (1981) ..................................19

*J'Aire Corp. v. Gregory*,
   24 Cal.3d 799 (1979) ..........................................................................23

*Maguire v. Hibernia Sav. & Loan Soc'y*,
   23 Cal.2d 719 (1944) ..........................................................................20

*Menefee v. Ostawari*,
   228 Cal.App.3d 239, 278 Cal.Rptr. 805 (1991) ................................19

*Murphy v. Hartford Accident. & Indem. Co.*,
   177 Cal.App.2d 539 (1960) ................................................................18

*Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*,
   138 Cal.App.4th 1215 (2006) .............................................................23


**FEDERAL STATUTES**

18 U.S.C. section 1961 ...............................................................13, 15

18 U.S.C. section 1964 ......................................................................13


**STATE STATUTES**

Cal. Civ. Code §§ 1638, 1639...........................................................20

Cal. Civ. Proc. Code § 312 (2007).....................................................17

Cal. Civ. Code Pro. § 337 ..................................................................20

Cal. Civ. Proc. Code § 339 ...........................................................18, 19

Cal. Corp. Code § 25400, 25401, 25500.....................................13, 8, 22

LACA_1025449.4

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule  9(b) .................................................................................................... *passim*

Rule 12 ....................................................................................................6, 11, 14

Rule 13 ............................................................................................................ 5-7

Rule 14) ......................................................................................................5, 6 10

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
SA CV-07-1417-JVS (ANX)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This action is nearly identical to another action now pending before this court (National Account Management, Inc., et al. v. Singhal, et al., Case No. SA-CV-07-333-JVS (RNBx)).  It is brought by the prior lawyer and agent of the plaintiffs in this first action, against the exact same defendants, based on the same transaction and occurrences, arising from the same escrow agreement, and asserting identical types of causes of action.

Indeed, because Plaintiff Nathan Drage was joined in that prior action as a third-party defendant in a third-party complaint brought by defendant SBI-USA, LLC, all of the claims Plaintiffs now raise in this action are barred as compulsory counterclaims that should have been raised by Plaintiffs in the prior action but were not.

Furthermore, all of the claims also fail as pled for a host of reasons.  Most of the claims in this action – filed on or about three years after Plaintiff's discovery of the underlying alleged wrongful conduct – are barred by the applicable two-year statute of limitations.  Several actions are also barred by the express terms of the draft written contract, which supplies the terms of the parties' oral contract, and of which the court may take judicial notice.

Finally, several individual claims suffer from fatal deficiencies particular to those claims:

- the fifth claim for securities fraud fails because there is no alleged purchase or sale of securities nor intentional conduct on the part of defendants to allege;

- the sixth claim for civil RICO fails because the Complaint fails to allege the requisite predicate acts, pattern of racketeering activity, and resulting injury;

LACA_1025449.4

- the seventh and eighth claims for intentional and negligent business interference fail because the Complaint fails to allege the prospective economic relationships and/or specify how those relationships were allegedly disrupted, and the negligent business interference claim further because there is no allegation as to the requisite duty that was breached;

- the ninth claim for quasi-contract/restitution fails because the allegations do not disclose any unjust enrichment by the defendants; and,

- the tenth claim for declaratory relief fails because it pertains to an alleged controversy between plaintiffs and third parties other than defendants and because it pertains to and therefore falls along with the flawed breach of contract claim.

Although these individual legal deficiencies are fatal to each claim, the Court need not delve into these issues, however, because this action should be dismissed with prejudice because all of the claims are compulsory counterclaims that should have been raised in the first action five months ago.  At a very minimum, this violation of the compulsory counterclaim rule requires a stay of this action pending resolution of the first.

## II.   BACKGROUND

### A.   The First Action

On February 21, 2007, National Account Management, Inc. and Business Group Funding, Inc. filed a complaint in Orange County Superior Court against, among others, defendants Shelly Singhal, Nicole Martin, SBI-USA, LLC, ("SBI-USA"), and SBI-Brightline V, LLC ("SBI Brightline").  Defendant SBI-USA (who had been served) removed that action to this Court on or about March 21, 2007 (hereinafter referred to as the "First Action").

After their motion to remand failed, and after the Defendant's motion to

2

LACA_1025449.4

dismiss was granted in part in the First Action, the National Account Management Plaintiffs filed a first amended complaint ("FAC") on or about June 8, 2007. (Johnston Decl. and Request for Judicial Notice [hereinafter "Johnston Decl."], Ex. A.)

The basis of the FAC is an alleged escrow agreement entered into "on or about December 2003," which the defendants allegedly breached by releasing certificates of Perfisans Holdings, Inc. ("Perfisans") to a third party (Richard Hue), and the subsequent refusal of Hue to return the certificates.  (FAC, ¶¶ 17, 20, 23.) The FAC alleges causes of action based on these events for breach of escrow agreement, negligence, fraud, breach of fiduciary duty, securities fraud, RICO, intentional and negligent interference with prospective advantage, quasi-contract/restitution, and declaratory relief.

On July 10, 2007, SBI-USA LLC filed a third party complaint ("TPC") in the First Action against Nathan W. Drage and Adrian Wilson.  (Johnston Decl., B.).  The TPC alleged  that plaintiffs "were damaged when SBI failed to handle [Perfisans] certificates," then "specifically den[ies] such allegations [of the FAC] as they relate to SBI . . . [and] incorporates by reference the allegations contained in the [FAC]," and then asserts claims for indemnity, equitable contribution and declaratory relief based on those very allegations.  (TPC, ¶10.)

On or about August 6, 2007, Drage and Wilson, as third party defendants, answered the TPC.  (Johnston Decl., C.)  They did not assert any counterclaims whatsoever against SBI-USA or any other party in that action. The parties then proceeded with discovery in the First Action, with Mr. Drage testifying at deposition and assembling and producing the documents on behalf of the plaintiffs responsive to the defendants' discovery requests.  The plaintiffs in the First Action failed to respond, however, to any discovery requests by defendant, which included a request for admission that the underlying contract at issue is an oral contract. (Johnston Decl., D, ¶ 4.)  Discovery was completed as of December 18, 2007.

LACA_1025449.4

(Court Record for First Action ["CR"] 43.)

**B.    The Second Action**

On December 7, 2007, the Drage Plaintiffs, using the same counsel as the National Account Management Plaintiffs in the First Action, filed this duplicative complaint ("Complaint"), thereby instituting this action (the "Second Action"). The Complaint in this Second Action is brought against *the exact same defendants* in the First Action and is *identical* to the FAC in the First Action with the sole exception of the following:

(a) the new plaintiffs are Nathan Drage, who has been counsel for the plaintiffs in the First Action since 2003, and Drage's trust;

(b) the number of Perfisans stock involved is different and thus the claimed damages are different (200,000 stock instead of the 400,000 and $400,000 in damages instead of $1,600,000), (Compare Complaint, ¶¶ 17, 35, 43, 53, 60, 70, and 78 (p. 15, lns. 13-14) with FAC, ¶¶ 17, 35, 43, 53, 60, 70, and 78);

(c) the Complaint attempts to flesh out the allegations of the RICO claim (compare paragraphs 78 of the two complaints); and,

(d) the Complaint slightly (but immaterially) alters the allegation of delayed discovery in an effort to escape the statue of limitations (compare paragraphs 36 of Compare Complaint, ¶ 36 of the two complaints).

Other than these slight modifications, the Complaint in the Second Action is an exact duplicate of the FAC in the First Action, paragraph for paragraph, word for word – even containing the exact same typos and prayer for relief.  (Compare FAC, pp. 14 – 16 and Complaint, pp. 18-20.).

LACA_1025449.4

## III.   **ARGUMENT**

A.   **The Complaint Should Be Dismissed With Prejudice, Or at Minimum Stayed Because It Asserts Claims that Are Barred as Compulsory Counterclaims in the First Action**

(1)   **The Complaint Asserts Compulsory Counterclaims**

Federal Rules of Civil Procedure 13(a) is quite clear that counterclaims that "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim" are compulsory and must be brought at the time of the answer.  *See* Fed.R.Civ.P. 13(a).  If such compulsory counterclaim is not included in an answer, they are waived, and cannot be asserted in a later or parallel action. *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995); *Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 854 (9th Cir. 1981) ("The Rule bars a party who failed to assert a compulsory counterclaim in one action from instituting a second action in which that counterclaim is the basis of the complaint.").[1]

Courts apply "the liberal 'logical relationship' test to determine whether two claims arise out of the same 'transaction or occurrence.'"  *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir. 1987) (citations omitted).  "This flexible approach to Rule 13 problems seeks to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Id.* (citation omitted).  Thus, in *Pochiro*, the court found to be compulsory counterclaims various claims that the court acknowledged "appear a bit removed from Prudential's [prior] action to enjoin the Pochiros' use of confidential records"

---

[1] The only exception to this rule is if a would-be counterclaimant can prove that it omitted that counterclaim through "oversight, inadvertence, or excusable neglect." If the would-be counterclaimant can make that showing, the court may allow it to have the counterclaim by amendment.  *See* Fed.R.Civ.P. 13(f).

because "the Pochiros' use of Prudential's customer records is inextricably intertwined with the facts as alleged in the Pochiros' complaint." *Id.* at 1250. Likewise, in *Seattle Totems*, the court found to be compulsory counterclaims the plaintiff's claims for breaches of contracts which, in a prior antitrust action by the defendants against that plaintiff, had been challenged as illegal and unenforceable. *Seattle Totems*, 652, F.2d at 853.

Here, the claims alleged in the Complaint in this Second Action arise out of the same transactions and occurrences that form the subject of the FAC and TPC in the First Action.  The Complaint is virtually identical to the FAC in the First Action and centers on alleged wrongdoings associated with the transfer of the same types of shares to the same third party under the same alleged escrow agreement. The TPC incorporated, responded to, and asserted corollary claims for indemnity, contribution and declaratory relief based on these same allegations in the FAC.

It makes no difference that (1) Drage was a third-party defendant in the First Action rather than an original defendant or cross-defendant, (2) that this Second Action is also brought against all of the defendants in the First Action instead of just SBI-USA, or (3) that Drage has added his personal trust as a plaintiff in this Second Action.

***First***, with regard to Drage being a third-party defendant in the First Action, Rule 14(a) is very clear that the same compulsory counterclaim rule applies to third-party defendants as well.  Rule 14(a)(3), states, in pertinent part,

> "The plaintiff may assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. ***The third-party defendant <u>must</u> then assert any defense under Rule 12 <u>and any</u> <u>counterclaim under Rule 13(a)</u>*** . . ."

(Emphasis added.)

***Second***, with regard to this Second Action now being brought against

6

other parties in addition to SBI-USA (the only complainant in the third-party complaint in the First Action), the claims in this Action are still compulsory counterclaims because *all* of the present defendants in this Second Action (Shelly Singhal, Nicole Martin, John Wong, SBI-USA, LLC, SBI Brightline V, LLC, First Securities USA, Inc. aka FSUSA, Inc., and SBI E-2 Capital , LTD, and SBI E-2 Capitol) were also defendants in the first action, and thus necessarily "opposing parties" to Drage under Rule 13(a).

Furthermore, even if they could somehow not be construed as opposing parties in the First Action, a Court still could find the claims against them in this Second Action to be mandatory counterclaims from the First Action because these defendants were in privity with SBI-USA in the First Action. *See Adams v. California Dept. of Health Services*, 487 F.3d 684, 691 (9th Cir. 2007) (applying concept of privity in context of collateral estoppel to find two actions were duplicative and therefore requiring the second to be dismissed even though it included different defendants). Two parties are deemed to be in privity if one "virtually represent[s]" the other. *Id*. Virtual representation, in turn, is demonstrated by an "identity of interests" and "adequate representation." *Id*. As the Court in *Adams* explained:

> "Although the concept of privity traditionally applied to a narrow class of relationships in which 'a person [is] so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved, we have expanded the concept to include a broader array of relationships which fit under the title of 'virtual representation.' The necessary elements of virtual representation are an identity of interests and adequate representation. Additional features of a virtual representation relationship include a close relationship, substantial participation, and tactical maneuvering."

*Id*.

---

7

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
SA CV-07-1417-JVS (ANX)

Thus in *Adams*, the Ninth Circuit found privity between defendants in the first action and additional defendants in a second action so as to hold that the plaintiff could not circumvent the consequences of missing a court-ordered deadline in the first action by simply filing a new action against new defendants. *Id.* at 691-92.  With respect to three of the new defendants, the court found privity because they were employees of the previously named corporate defendant at the time of the events in both complaints, they participated in the first complaint by submitting declarations, and their interests were aligned with that corporate defendant because that corporate defendant's liability was "predicated largely upon a finding of wrongdoing by its employees."  *Id.* at 691.  With respect to two other new defendants, who were not employees of the corporate defendant, the court also found privity because they "maintained a close relationship with [the corporate defendant] as agents hired" by the corporate defendant in connection with the events in the complaints, they "possessed an identity of interest" with the corporate defendant, and they too submitted declarations in support of the corporate defendant's motion for summary judgment.  *Id.* at 692.  Finally, the court noted that the corporate defendant "adequately represented the five new defendants" as the corporate defendant "consistently maintained" that the activities at issue in both complaints were proper and that its employees and agents acted lawfully.

Here, by the same token, the additional Defendants who are part of this motion (Singhal, Martin, and SBI-Brightline) were in privity with SBI-USA, and thus their interests were and are adequately represented by SBI-USA in the First Action.  They were not only ***named*** in the First Action, but they also were alleged to be either officers or employees of SBI-USA and/or participants in the alleged events giving rise to the First Action, have participated in the First Action (Johnston Decl., Exs. E, F), and are represented by the same counsel as SBI USA in the first action.  Accordingly, as in *Adams*, Plaintiffs cannot escape the consequences of missing a deadline in the prior action (imposed by the compulsory

8

LACA_1025449.4

counterclaim rule) simply by filing a new action against more defendants than just SBI USA, LLC (the third-party complainant in the First Action).

***Third***, with regard to this Second Action also adding Drage's personal trust as a new plaintiff, the existence of privity between Drage and his personal trust here similarly prevents Plaintiffs from escaping the compulsory counterclaim rule. *See Thunderbird Trading Post, Inc. v. U.S. Bureau of Alcohol, Tobacco and Firearms*, 2007 WL 1128810 (W.D. Wash, 2007) (finding privity between a plaintiff in the second action and a party in a prior action so as to collaterally estop plaintiff in the latter action from arguing the same issue vigorously pursued and decided in the previous action.).  In *Thunderbird*, the court found privity because the two parties had an identical interest (that particular cigarettes not be found to be contraband) and a close relationship with one another (the party in the first action being the manager, as well as husband of the owner, of the party in the second action). *Id.* at *5.

Here, there is no question that Drage and his personal trust share an identity of interests with regard to the alleged transaction or occurrence involving the transfer of Drage's certificates; there is no suggestion of inadequate representation by Drage in the First Action; and, indeed, the Complaint in this Section Action simply refers to Drage and his personal trust "collectively" and interchangeably "as 'Plaintiffs or Drage.'"  (Complaint, ¶ 5.)

Accordingly, all of the claims in the Complaint for this Second Action, which mirror the FAC's allegations in the First Action, clearly arise from the same transaction or occurrence at the center of the FAC and TPC in the First Action, and thus should have been raised in response to the TPC in that action.  Drage's failure to do so now bars him, along with his personal trust with which he was in privity, from raising these claims now.

LACA_1025449.4

### (2)   The Court Should Thus Dismiss this Action With Prejudice, Or, at the Very Least, Stay or Enjoin this Action

Plaintiffs failure to raise these compulsory counterclaims in the First Action means that the claims are lost and cannot later be asserted in a second, separate action.  *Hydroanautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) ("If a party has a counterclaim which is compulsory and fails to plead it, it is lost, and cannot be asserted in a second, separate action after conclusion of the first.")  Accordingly, this action may be dismissed outright with prejudice.  *See Adam v. Jacobs*, 950 F.2d 89, 92, 94 (2d Cir. 1991) (noting in a case found to involve compulsory counterclaims that "a district court can go 'beyond the allowable bounds of discretion' when it refuses to stay *or dismiss* a duplicative suit[,]" and remanding to the district court with instructions to dismiss) (emphasis added).

Alternatively, this action should be prevented from going forward until resolution of the First Action either by way of a stay in this action (*see Adam*, supra) or injunction flowing from the First action.  *Seattle Totems*, 652 F.2d at 854 ("It is well-settled that in order to enforce this bar [of Rule 13], a federal court may enjoin a party from bringing its compulsory counterclaim in a subsequent federal court action.") (citations omitted); *Cenergy Corp. v. Bryson Oil & Gas P.L.C.*, 657 F.Supp. 867, 871 (D. Nev. 1987) ("It is clear that a federal court may require parties to bring all compulsory counterclaims before it by means of an injunction.")

In this case, of course, both the First Action and Second Action are now before this Court.  Thus, if the Court does not dismiss this action with prejudice, the Court can choose either to stay this Second Action or, in the First Action, enter an order enjoining this Second Action from going forward.

If the Court stays this Second Action, it should require Drage, if he wishes to bring these claims, to bring them as counterclaims in the underlying action and attempt to justify, pursuant to FRCP 13(f), why they have been omitted for so long. Defendants are confident that Plaintiffs will fail in that attempt because Plaintiffs

LACA_1025449.4

have not and cannot offer any justification for why these counterclaims were not brought when Drage filed his answer in the First Action more than four months ago. Allowing them to go forward now would be a waste of resources.

## B. Drage's Claims Fail As A Matter Of Law.

### (1) Applicable Legal Standards

#### a) Rule 12(b)(6) Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *See Barron v. Reich*, 13 F.3d 1370. 1374 (9th Cir. 1994). The Court may consider a "document integral to or explicitly relied upon in the complaint," and/or "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted.); s*ee also I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (courts may consider documents that are not attached to a pleading if they are referenced in the pleading and are important to the claim). Moreover, the Court need not accept as true allegations that contradict facts that may be judicially noticed. *See Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

While the court must accept material allegations as true, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1961, 1974 (2007). Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1965 (internal quotation marks omitted).

LACA_1025449.4

### b)       Rule 9(b) Heightened Pleading Standard for Fraud

Plaintiffs are required in all averments of fraud or mistake to state with particularity the circumstances constituting fraud or mistake.  *See* Fed. R. Civ. P. 9(b).  To avoid dismissal under Rule 9(b), Plaintiffs must plead with particularity "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  In addition, Plaintiffs must plead the role of each defendant in each scheme with particularity.  *See LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992) (requiring Plaintiffs to plead the role of each defendant in each scheme with particularity).

### (2)       Plaintiffs' Sixth Claim For Civil RICO Fails To Plead A Civil RICO Violation

A civil RICO claim requires a showing of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007).  In other words, Plaintiffs must plead that SBI committed "predicate criminal acts constituting a pattern of racketeering activity."  *Sebastian Intern., Inc. v. Russolillo*, 128 F.Supp.2d 630, 634 (C.D. Cal. 2001) (emphasis added).  A "pattern of racketeering activity" requires a sustained pattern of illegal activities that occurred outside of the enterprise itself by each defendant (two predicate acts each), "over a substantial period of time" or "include a specific threat of repetition."  *Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1527-28 (9th Cir. 1995).

Here, plaintiffs have failed to plead a civil RICO claim for three reasons.  One, Plaintiffs have failed to allege a "pattern of racketeering."  At most, plaintiffs have alleged one predicate act of mail fraud.  For a "pattern," plaintiffs must allege at least two acts.  Two, the alleged predicate acts are so poorly and vaguely pled that it is impossible to determine what acts plaintiffs are referring to, and thus the

12

Complaint fails to allege any predicate act with requisite specificity.  Finally, Plaintiffs have failed to allege sufficient facts to show they have standing to pursue their RICO claim.

**a)**       **The Complaint Fails to Allege a "Pattern Of Racketeering"**

**(1)**       **Section 1961 Does Not Include Securities Violations or "Usury" as Predicate Acts**

For purposes of civil RICO, plaintiffs must allege two predicate criminal acts as the term "predicate act" is defined very specifically in 18 U.S.C. section 1961.  By using terms such as "stock embezzlement," "stock manipulation," "securities fraud," "insider trading," and "pump and dump," plaintiffs try to create the impression that defendant committed multiple securities related crimes which constitute predicate acts.  None of these securities related allegations, however, can constitute a predicate act because of 18 U.S.C. sections 1961 and 1964.  Title 18 section 1961 lists the types of crimes that qualify as predicate acts for both civil and criminal RICO.  The only securities related act permitted under section 1961 is "fraud in the sale of securities."  However, Section 1964(c)  of the RICO provisions specifically excludes "fraud in the purchase or sale of securities" as a basis for establishing a violation of civil RICO.  Thus, none of plaintiffs' securities allegations constitutes a predicate act.

Similarly, plaintiffs' allegations of "embezzlement" and "illegal usurious loans" do not qualify as predicate acts because neither embezzlement nor usury is a predicate act listed in section 1961.[2]

---

[2] Moreover, the allegation of embezzlement of plaintiffs' because, as noted by this court in its prior order in the First Action (Johnston Decl., Ex. G), title to the shares did not pass because, according to plaintiffs, the terms of the escrow agreement were not performed.  Title also never passed because the delivery of the certificates to Hue did not deprive plaintiffs of ownership of the shares themselves.

**(2)      The Single Alleged Mailing Does Not Constitute a "Pattern"**

At most, plaintiffs have alleged a scheme to defraud through one use of the mails.  The Complaint appears to allege only one mailing in furtherance of this scheme – the mailing of the certificates of Perfisans owned by plaintiffs, BGF, and NAMS to Richard Hue.  One act, however, does not constitute a pattern.  At least two acts are required.  *Allwaste, Inc,* 65 F.3d at 1527-28.  Plaintiffs have failed to allege several predicates acts that either occurred "over a substantial period of time" or "include a specific threat of repetition." [3]  *Id.*, at 1527.  "Predicate acts extending over a few weeks or months," such as the single one alleged here, and "threatening no future criminal conduct do not satisfy this requirement."  *Id.*   The mailing was an isolated act with no threat of future repetition.

**b)      The Complaint Fails to Allege Any Predicate Acts with Specificity**

As noted above, Rule 9(b)'s specificity requirement applies to alleged predicate acts of fraud underlying civil RICO claims.  Accordingly, a RICO claim that fails to plead alleged predicate acts of wire and mail fraud with the requisite particularity shall be dismissed for failure to state a claim under Rule 12(b)(6).  See *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004).

Here, the Complaint, in conjunction with plaintiffs' recently filed RICO Case Statement, utterly fails to plead any alleged predicate act with requisite specificity.  The predicate acts the Complaint appears to allege are:  "stock embezzlement," "stock manipulation," "securities fraud," "insider trading," "pump

---

[3] Plaintiffs attempt to allege a pattern on the basis that Defendants' activities are "ongoing and continuous even to the extent that the Defendants, to this day, refuse to return the shares of stock and/or its value which were wrongfully embezzled" (Compl., ¶ 78d. (p. 13)), however this allegation simply relates to the same transaction – a single transfer of certificates – rather than a threat of repetition of additional and further transactions, and thus this allegation does not satisfactorily plead a pattern.

14

LACA_1025449.4

and dump," "wire and mail fraud," and "illegal usurious loans."  As stated above, none of these alleged acts, except mail or wire fraud, is a predicate act under section 1961.  Even if they were allowed under section 1961, the allegations are hopelessly conclusory and fail to allege the most basic facts such as where, when, and how.  For instance, as to "usurious loans," the Complaint fails to identify who made the loans to whom, when the loans were made, and the usurious interest rate at which the loans were made.  As to the "pump and dump" allegation, the Complaint fails to allege how defendant helped to "pump" the stock by falsely promoting its value, how or when the stock price then went up, then how or when defendant "dumped" the stock.

The only predicate act that is alleged in any degree of specificity in the Complaint is "mail fraud," which appears to be predicated on the one-time delivery of the Perfisans share certificates to Hue followed by the alleged representations regarding Hue's refusal to release the shares.  (Compl., ¶ 20).  Even those allegations, however, offer no information as to who, what, where, when and how. The Complaint neglects to allege the specific date of the delivery of certificates, as well as the specific date, content, speaker, and recipient of the subsequent alleged representations, much less how they were communicated.

Defendant simply cannot defend against these alleged predicate acts because the complaint fails to allege basic facts about them.  Defendant cannot properly investigate these claims without knowing where to begin.  Moreover, there is no excuse for such lack of specificity.  As described above, Plaintiff Nathan Drage has been directly involved in the discovery process as to the First Action, attorney Carlos Negrete is counsel to plaintiffs in both cases, discovery in the First Action has been completed, and the claims in both actions are nearly identical and are based on the exact same transactions and events.  Thus, plaintiffs in the instant action have the benefit of the discovery from the first action.  Despite all this discovery, they have failed to allege the requisite specific facts in their Complaint

LACA_1025449.4

1    as to predicate acts.

2              c)        **The Injury Element Is Inadequately Pled**

3              Finally, Plaintiffs also do not have standing to bring a civil RICO claim

4    because they do not and cannot allege the requisite injury.  They cannot allege that

5    funds derived from the alleged racketeering activity (mail fraud for example) were

6    used to injure them; that is, the investment of the proceeds of the racketeering

7    activity caused the injury to Plaintiffs.  *See WAGH v. Metris Direct, Inc.*, 363 F.3d

8    821, 828-29 (9th Cir. 2003) ("[Plaintiff] has asserted that [defendant] defrauded

9    him, but has failed to assert that they have injured him by the use or investment of

10   the income derived from the predicate acts of fraud. . . .We therefore hold that for

11   WAGH to have standing to sue under §§ 1962(a) and 1964(c), he must have

12   alleged that funds derived from the alleged racketeering activity (mail fraud) were

13   used to injure him.").  Indeed, in their RICO statement, plaintiffs concede that they

14   "do not yet know of the extent of the use of the income from the RICO activity."

15   Plaintiffs make no allegation as to how such income was used to injure them.

16             Plaintiffs have failed to adequately allege, and cannot adequately allege, the

17   necessary elements of their RICO claim most notably because Plaintiffs' entire

18   case rests on a single transaction.  The Court should recognize this claim for what

19   it is – an ill-conceived attempt to transform a garden variety breach of contract

20   and/or negligence  case into one for civil RICO liability – and thus dismiss this

21   claim with prejudice.

22             Perhaps the Southern District of New York best characterized a typical

23   plaintiff's failure to plead even RICO's most basic elements in criticizing yet

24   another suspect RICO claim:

25             I surmise that every member of the federal bench has before him or her

26             at least one – and possibly more – garden variety fraud or breach of

27             contract cases that some Plaintiff has attempted to transform into a

28             vehicle for treble damages by resort to what another respected jurist,

16

Judge Allan Schwartz of this Court has referred to as "the litigation equivalent of a thermonuclear device" – a civil RICO suit. . . . All too frequently, these damning actions are commenced without the Plaintiff's (or his lawyer's) being aware of the most fundamental principles of the law that governs allegations of racketeering in a civil action. This case is more of the same.

*Goldfine v. Sichenzia*, 118 F.Supp.2d 392, 394-95 (S.D.N.Y. 2000).

Plaintiffs' RICO claim here is "more of the same," and, as such, should be dismissed with prejudice.

### (3)    Several Of The Claims Are Barred By The Applicable Statute of Limitations

Civil actions based upon violations of California law must be brought within limitations periods "after the cause of action has accrued." Cal. Civ. Proc. Code § 312 (2007). A cause of action typically accrues when the defendant completes the act upon which plaintiff sues. *See Dillon v. Bd. of Pension Comm'rs of Los Angeles*, 18 Cal.2d 427, 430 (1941).

According to Plaintiffs, the escrow agreement was breached when SBI sent the Certificates to Hue. (Compl. ¶ 1.) Although Plaintiffs fail to specify the date of that transfer and the date they learned of the transfer, Plaintiffs do allege that "Plaintiffs ultimately did not discover[] the full extent and/or nature of the schemes and malicious conduct herein alleged until late December 2004 and early 2005." (Complaint, ¶ 36.) The Complaint, being filed on December 7, 2007, was thus filed at least three years after Plaintiffs' alleged discovery of the alleged wrongdoing.[4]

---

[4] Plaintiffs' allegation in paragraph 36 does not spare Plaintiffs from the bar of limitations because (a) "It is not necessary that all or even the greater part of the damages have to occur before the cause of action arises" (*Bell v. Hummel & Pappas*, 136 Cal.App.3d 1009, 1016 (1982)), and (b) "[i]n delayed discovery cases, the limitations period begins to run once the plaintiff has notice or information about circumstances sufficient to put a reasonable person on inquiry

### a) Claims Barred By A Two Year Statute Regardless Of The Nature Of The Agreement  -- Securities Fraud (5th), Business Interference Torts (7th and 8th), And Quasi-Contract And Restitution (9th)

In California, a state securities fraud claim must be brought before the expiration of two years after the discovery by the plaintiff of the facts constituting the violation.  *See* Cal. Corp. Code § 25506(b).  Also, the statutes of limitation on Plaintiffs' interference and quasi-contract/restitution claims are two years.  *See* Cal. Civ. Proc. Code § 339; *Murphy v. Hartford Accident. & Indem. Co.*, 177 Cal. App. 2d 539, 543 (1960) (two-year statute of limitations applies to interference claims and begins to run when plaintiffs discover the alleged loss); *Edwards v. Fresno Community Hosp.*, 38 Cal. App. 3d 702, 706 (1974) (two-year statute of limitations applies to quasi-contract/restitution claim and begins to run when plaintiffs discover the alleged loss.)

Accordingly, the Fifth, Seventh, Eighth, and Ninth claims all fail because they were brought in December 2007, which is far past two years beyond the alleged discovery of wrongdoing in "late December, 2004 and early 2005."

### b) Claims Barred If Contract Deemed Oral Or Implied – Breach Of Escrow Agreement (1st), Negligence (2nd), Breach Of Fiduciary Duty (4th), and Declaratory Relief (10th)

In their Complaint, Plaintiffs rely heavily on the existence of an alleged written escrow agreement.  Yet, they fail to attach the alleged agreement to their Complaint filed on December 7, 2007.  Plaintiffs never allege that a written

---

notice, *i.e.*, the limitations period begins to run once the plaintiff has a suspicion of wrongdoing" (*Barker v. Brown & Williamson Tobacco Corp.*, 88 Cal.App.4th 42, 50, (2001)), which notice Plaintiffs admit to having in "late December, 2004 and early 2005" in the prior sentence of their Complaint.

LACA_1025449.4

agreement was executed, nor do they allege any express terms that would logically be contained in the agreement if it did exist.  Rather, Plaintiffs suggest only once in their Complaint that the alleged agreement should be treated as a written contract (Compl. ¶ 39) specifically where they allege that "[t]he Agreement constituted a written contract between Plaintiffs and SBI."  Plaintiffs are trying to save the statute of limitations by relying on a written contract, but the only version Defendant SBI is aware of is a *rough draft* of a *potential* written agreement, a copy of which has been filed in the First Action and is attached to the Declaration of Pamela Johnston at Ex. H.  Plaintiffs' conclusory allegation that the contract was written can be disregarded because it is contradicted by Plaintiffs' admission in the First Action that the contract was, at most, oral.  (Johnston Decl., Ex. D, ¶ 4.)

Under California law, claims for breach of an implied or oral contract are governed by a two-year statute of limitations. See Cal.Civ.Proc.Code § 339(1) ("[a]n action upon a contract, obligation or liability not founded upon an instrument of writing" must be filed "[w]ithin two years").  Such claims accrue at the time of breach. *See Menefee v. Ostawari*, 228 Cal.App.3d 239, 278 Cal.Rptr. 805, 809 (1991) ("a cause of action for breach of contract ordinarily accrues at the time of breach regardless of whether any substantial damage is apparent or ascertainable");  *In re Estate of Fincher*, 119 Cal.App.3d 343, 174 Cal.Rptr. 18, 23 (1981) ("The general rule is that a suit for breach of an implied agreement accrues at the time of the breach.").

Likewise, the statute of limitations bars all claims arising out of the alleged agreement.  Therefore, the two-year limitations period would apply to the claim for negligence.  *See Feinberg v. Intrastate Escrow Corp.*, 25 Cal. Rptr. 499, 502 ("Code Civ.Proc. § 339, subd. 1) which allows two years for bringing actions not founded on a written instrument . . . has been held applicable either to an action for breach of an escrow agreement or to an action for damages on account of negligence in the performance thereof.")  It would also apply to the claim for

19

LACA_1025449.4

breach of fiduciary duty because the source of the grievance is breach of an oral agreement.  *See Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assoc's, Inc.*, 115 Cal. App. 4th 1145, 1158-59 (2004).  Likewise, it would apply to the declaratory relief claim because it is based upon rights and duties with respect to an oral agreement must also be brought within two years.  *See Maguire v. Hibernia Sav. & Loan Soc'y.*, 23 Cal.2d 719, 734 (1944) (nature of the right sued upon determines the statute of limitations applicable to a declaratory relief claim).

Accordingly, if the Court disregards Plaintiffs' conclusory allegation that the contract was written in favor of finding it was at best oral or implied by virtue of judicially noticeable facts and admissions, then Plaintiffs' first claim for breach of escrow agreement, second claim for negligence, fourth claim for breach of fiduciary duty, and tenth claim for declaratory relief are all bared by the two-year rule.

### (4) Even If The Court Treats the Non-Executed Draft Agreement as a Written Agreement, the Draft Agreement's Express Provisions Bar Several Of Plaintiffs' Claims

If the Court gives the unexecuted draft of the agreement the same effect as a written agreement, the contract claim will not be time-barred by the applicable four-year statute of limitations (*See* Cal. Code Civ. Pro. § 337); however, the draft agreement will be governed by its written provisions.  *See* Cal. Civ. Code §§ 1638, 1639.  Here, the draft Agreement's express terms prohibit several of Plaintiffs' claims.

### a) Plaintiffs' Negligence-Based Claims are Barred

The draft Agreement expressly states that Plaintiffs will not hold SBI liable for mistakes, the default or misconduct of its employees, and/or any other errors in judgment or acts taken in good faith.  (*See* Draft Escrow Agreement, Johnston Decl., Ex. H.)  SBI-USA's liability is limited to its own willful misconduct.  (*See Id.*, section 5.5.)  Therefore, the terms of the draft Agreement expressly bar all

negligence-based claims.  Accordingly, Plaintiffs' second claim for negligence and eighth claim for negligent interference, and (to the extent they are grounded in negligence or should be treated as "errors in judgment" under the terms of the draft agreement) fourth claim for breach of fiduciary duty, ninth claim for quasi-contract/restitution, and tenth claim for declaratory relief are all barred by the terms of the contract.  To the extent these claims are not grounded in negligence, they are grounded in fraud, but fail to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"), as explained above and further below.

Moreover, section 5.9 of the draft Agreement expressly states "in the event of any disagreement between the undersigned, and/or the person or persons named in the foregoing instructions, and/or any other person, resulting in adverse claims or demands being made…, [SBI] shall not become liable to the undersigned…for the failure to comply with such conflicting or adverse demands."  According to the draft Agreement, Plaintiffs and Hue were both "undersigned[s]."  (*Id.*, pp. 9-10.)  Therefore, the draft Agreement expressly states that SBI shall not become liable for any disagreement between Plaintiffs and Hue.  Plaintiffs' Complaint demonstrates that such a disagreement is the underlying basis of SBI's alleged wrongdoing as it was Hue who received the Certificates from SBI and who caused Perfisans to cancel the Shares.  (Compl. ¶¶ 17, 21, 23.)  Accordingly, Plaintiffs cannot hold SBI liable on such theories, and Plaintiffs' negligence-based claims must be dismissed as to SBI for this reason as well.

### b)     Plaintiffs' Quasi-Contract/Restitution Claim is Barred

If the Court determines that the draft Agreement defines, *inter se*, the rights and liabilities of the parties, Plaintiffs' ninth claim for quasi-contract/restitution claims is prohibited for this reason as well.  *See California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172-173 (2001)

LACA_1025449.4

(unjust enrichment cause of action does not lie where an express binding agreement exists and defines the parties' rights).

**(5)   Plaintiffs' Fifth Claim For Securities Fraud Should Be Dismissed**

In connection with their securities fraud claims, Plaintiffs allege that SBI violated "California Corporations Code §§ 25400 *et seq*. and 25500 *et seq*."  By using the term "et seq.," Plaintiffs indicate the violations could be of sections 25400, 25401, or 25402, for example.  As explained in *California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 108-109 (2001), each of these sections proscribes a different type of activity.  Section 25400 prohibits false and misleading statements designed to manipulate the securities markets; section 25401 prohibits misrepresentations in connection with the purchase or sale of securities; finally, section 25402 prohibits insider trading.  *Id.* at 108.  Even if Plaintiffs are trying to allege a violation of section 25400 only, that section has several subsections that prohibit different types of conduct as well.  Plaintiffs must cite which specific section and subsection they allege was violated.  On that basis alone, this cause of action should be dismissed.[5]

**(6)   Plaintiffs' Seventh And Eighth Claims for Intentional And Negligent Interference With Prospective Advantage Should Be Dismissed**

With respect to their intentional interference claim, Plaintiffs' allegations fail to identify any alleged prospective economic relationship or specify how that

---

[5] Further, Plaintiffs have failed to make out a viable state securities cause of action if what they are attempting to plead, for example, is the cause of action outlined in *California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 111-114 (2001). That cause of action requires Plaintiffs to plead with specificity that defendants (1) intentionally; (2) engaged in conduct prohibited by the securities fraud statutes; (3) with knowledge that its conduct was false or misleading; (4) and having the specific intent to affect the price of a security; which (5) induced the ***purchase or sale*** of that security by another person. *Id.*  All of these elements are not clearly set forth in the Fifth Cause of Action.

22

LACA_1025449.4

1   relationship was allegedly disrupted.  *See Stevenson Real Estate Servs., Inc. v. CB*

2   *Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215, 1220 (2006)

3   (explaining that to set forth an interference claim, plaintiff must allege, among

4   other things, that an economic relationship exists, that it carries a probability of

5   future economic benefit, that the relationship was disrupted, and that the disruption

6   caused plaintiff economic harm).  Accordingly, the Court should dismiss Plaintiffs'

7   intentional interference claim.

8       Similarly, Plaintiffs fail to state a negligent interference claim, which

9   requires, among other things, the existence and breach of a duty of care by

10  Defendant.  *See J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 803 (1979).  In Plaintiffs'

11  eighth cause of action for negligent interference with prospective advantage,

12  plaintiffs do not set forth what the specific duty of care existed in 2004 that SBI

13  allegedly breached here.  Instead they regurgitate their intentional interference

14  allegations and add that Defendants "carelessly and negligently," instead of

15  intentionally, interfered.  (Compl. at ¶¶ 89-92.)

16          **(7)    Plaintiffs' Ninth Claim for Quasi-Contract/Restitution**

17                  **Should Be Dismissed.**

18      Plaintiffs' quasi-contract/restitution claim is premised on the unjust

19  enrichment of Defendants.  (Compl. ¶ 95.)  Yet, Plaintiffs allege that Hue and

20  Perfisans, ***not SBI***, received the Certificates and cancelled and refused to re-issue

21  the Shares. (Compl. at ¶¶ 20, 23, 28-30.). This claim must be dismissed because

22  Plaintiffs do not allege, and cannot allege, that SBI received or unjustly retained

23  any benefit at Plaintiffs' expense.[6]  *See Hirsch v. Bank of America,* 107

24  Cal. App. 4th 708, 717 (2003) (stating that an unjust enrichment claim requires the

25

26  ───────────────

    [6] Moreover, the defendants were not unjustly enriched because, as noted by this
27  court in its prior order in the First Action (Johnston Decl., Ex. G), title to the shares
    did not pass since, according to plaintiffs, the terms of the escrow agreement were
28  not performed.  Title also never passed because the delivery of the certificates to
    Hue did not deprive plaintiffs of ownership of the shares themselves.

LACA_1025449.4

receipt and unjust retention of a benefit at another's expense).

### (8)   Plaintiffs' Tenth Claim For Declaratory Relief Should Be Dismissed.

To the extent a controversy exists for which declaratory relief can be granted, it does not involve SBI.  As alleged in the Complaint, it is Hue who received the certificates and Perfisans who could and still can reissue those certificates upon plaintiffs' request.    But they are not parties to this action.  There is no declaratory relief the court can impose as to SBI that will give Plaintiffs the relief they seek.

### (9)   Plaintiffs Cannot Meet FRCP 9(b)'s Heightened Pleading Standard for Their Fraud-Based Claims.

As explained above, Plaintiffs are required in all averments of fraud or mistake to state with particularity the circumstances constituting fraud or mistake.  *See* Fed. R. Civ. P. 9(b).  Rule 9(b) applies to all claims grounded in fraud, even if the theory supporting such claims is not technically termed fraud.  *See Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996), *affirmed*, 152 F.3d 918 (2d. Cir. 1998) (aiding and abetting claims must meet Rule 9(b) requirements where underlying violations are based on fraud); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1989) (Rule 9(b)'s requirements apply to civil RICO fraud claims);  *see also In re Sharp Intern. Corp.*, 302 B.R. 760, 770 (E.D.N.Y. 2003), *affirmed*, 403 F.3d 43 (2d. Cir. 2005) (Rule 9(b) applies to fiduciary duty claims based on fraudulent conduct).  Many of Plaintiffs' claims are either technically termed fraud (fraud, securities fraud), are considered fraud (RICO), or are grounded in fraud (intentional interference with prospective advantage, breach of fiduciary duty, quasi-contract/restitution and declaratory relief).

Accordingly, each of these claims are subject to Rule 9(b)'s stringent pleading standards and, for the reasons explained above, fail because the

Complaint does not plead its factual allegations with sufficient particularity.

Plaintiffs do not identify the particular dates upon which any alleged misrepresentations were made or any particular actions were taken contrary to the alleged Agreement.  Specifically, Plaintiffs fail to allege when the certificates were transferred to Hue or when the Shares were allegedly cancelled.  Moreover, Plaintiffs group the defendants together in their allegations.  Indeed, Plaintiffs have failed to plead with the requisite particularity:  1) the facts regarding who committed the alleged wrongdoing; 2) the facts regarding what each person allegedly did; and 3) who the individuals were who acted on behalf of the Plaintiffs.  Plaintiffs' fraud-based claims must be dismissed for failure to meet the requirements of Rule 9(b).

//

//

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
SA CV-07-1417-JVS (ANX)

LACA_1025449.4

## IV.  <u>CONCLUSION</u>

For all of the reasons stated herein and in the notice of motion, this Court should grant this motion and dismiss this action with prejudice in its entirety or, at a very minimum, stay or enjoin this action from proceeding until the prior action is concluded.

Respectfully submitted,

Dated:  January 10, 2008

FOLEY & LARDNER LLP
PAMELA L. JOHNSTON

By:  /s/ _____
PAMELA L. JOHNSTON
Attorneys for Defendants SBI-USA,
LLC, SBI BRIGHTLINE V,  LLC,
SHELLY S. SINGHAL and NICOLE
MARTIN